**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STARSTONE SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case Number: 18-cv-3748 ) ) |
| THE CASINO LAW GROUP, LLC, and CORY ARONOVITZ, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, StarStone Specialty Insurance Company, by and through its counsel, Gary L. Gassman and Jonathan R. Walton of Cozen O'Connor, and files this Complaint for Declaratory Judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, seeking a declaration of its rights and responsibilities under a Lawyers Professional Liability Insurance Policy issued to Defendant The Casino Law Group LLC. Plaintiff alleges as follows:

**INTRODUCTION**

1. This is an action for declaratory judgment, brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, to determine and resolve questions of actual controversy involving a Lawyers Professional Liability Insurance Policy issued by StarStone Specialty Insurance Company ("StarStone") to The Casino Law Group LLC ("Casino Law Group"). Specifically, the parties dispute whether StarStone owes a duty to defend or has an obligation to indemnify Casino Law Group and Cory Aronovitz ("Aronovitz") with respect to a pending lawsuit filed against Casino Law Group and Aronovitz by Windy City Promotions, LLC ("Windy City").

2. StarStone issued a Lawyers Professional Liability Insurance Policy, number Z82390170APL, to Casino Law Group for the period of August 17, 2017 to August 17, 2018 (the "Policy"). On April 11, 2018, Windy City filed a lawsuit captioned *Windy City Promotions, LLC v. Pace-O-Matic, Inc., Pier2 Holdings, LLC, Cory Aronovitz, Casino Law Group, Dwayne Waxer and Daniel Warren*, Case No. 2018 CH 04716, in the Circuit Court of Cook County, Illinois (the "*Windy City* Action") alleging that Casino Law Group and Aronovitz, as counsel to Windy City, steered Windy City to make investments and enter into contractual relationships with companies other than the **Named Insured** which were controlled by Aronovitz and/or which Aronovitz was a member, owner and/or manager, and further alleging that Aronovitz obtained a 15% ownership interest in Windy City.

3. In this declaratory judgment action, StarStone seeks to clarify the availability of coverage under Policy with respect to the *Windy City* Action. Specifically, StarStone seeks a declaration from this Court that it has no duty to defend or obligation to indemnify Casino Law Group or Aronovitz under the Policy with respect to the *Windy City* Action because coverage is excluded by exclusion K., as well as by other Policy terms, conditions and exclusions.

## THE PARTIES

4. StarStone is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Hudson County, New Jersey.

5. Casino Law Group is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business in Cook County, Illinois.

6. Aronovitz is a resident of Illinois and the sole member and manager of Casino Law Group.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because StarStone is citizen of Delaware and New Jersey and Casino Law Group and Aronovitz are citizens of Illinois. The amount in controversy exceeds the jurisdictional threshold of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Casino Law Group and Aronovitz are located in this District.

9. This Declaratory Judgment Complaint is filed pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* An actual, justiciable controversy exists between StarStone, Casino Law Group and Aronovitz that involves the rights and liabilities under a contract of insurance, and this controversy may be resolved by a judgment in this action without regard to other lawsuits.

## THE *WINDY CITY* ACTION

10. On April 11, 2018, Windy City filed the *Windy City* Action against Casino Law Group, Aronovitz, Pace-O-Matic, Inc. ("Pace-O-Matic"), Pier2 Holdings, LLC ("Pier2"), Dwayne Waxer ("Waxer") and Daniel Warren ("Warren") in the Circuit Court of Cook County, Illinois. (A true and correct copy of the Verified Complaint is attached as **Exhibit A**).

11. The *Windy City* Action alleges that Windy City is in the business of distributing and operating certain electronic product promotion kiosks throughout the State of Illinois.

12. The *Windy City* Action alleges that Aronovitz controlled Pier2 during the relevant time period alleged in the *Windy City* Action.

13. Aronovitz is a member and manager of Pier2.

3

14. The *Windy City* Action alleges that Waxer and Aronovitz are members of Pace-O-Matic.

15. The *Windy City* Action alleges that Aronovitz steered Windy City into the electronic promotion kiosks industry to further his own interests and defraud Windy City by advising Windy City to engage Casino Law Group and Aronovitz as counsel so that Aronovitz would benefit from a potential business investment with Pace-O-Matic by positioning his company, Pier2, to participate in the transaction as the agent of Pace-O-Matic.

16. The *Windy City* Action alleges that Pace-O-Matic refused to enter into a contract with Windy City unless Windy City paid Aronovitz the sum of $250,000 and gave him a 15% membership interest in Windy City, and Windy City agreed to these contractual obligations based on misrepresentations that Aronovitz would bring 600 contracts to the deal, that Pier2's existing customers would become Windy City's customers and that Aronovitz had a larger network that would bring additional deals to Windy City.

17. The *Windy City* Action alleges that the Exclusive Distribution Agreement, dated September 25, 2013, between Windy City, Pier2 and Pace-O-Matic (the "2013 Agreement") provides as follows:

> 6.7 <u>Distributor Formation Contingency Requirement</u>. The effectiveness of this Agreement is contingent upon the satisfaction of Manufacturer that the following terms have been agreed to and a definitive agreement has been executed between Cory Aronovitz and Distributor upon the signing of this agreement by all parties: (1) a $250,000 payment made to Aronovitz within 5 days of the execution of this Agreement by all parties hereto; and (2) Aronovitz acquiring a 15% non-dilutable ownership interest in the distributor.

18. The *Windy City* Action alleges that, after entering into the 2013 Agreement, Pace-O-Matic and Aronovitz improperly steered customers away from Windy City and to Pier2 and Pace-O-Matic in violation of the 2013 Agreement.

19. The *Windy City* Action alleges that Windy City formally sent notice of termination of its engagement of Casino Law Group and Aronovitz in November 2014.

20. The *Windy City* Action alleges that Aronovitz was voted out as a member of Windy City on December 24, 2014.

21. The *Windy City* Action asserts that Windy City, to recoup its losses as a result of the defendants' conduct, agreed to a reorganization of its kiosks business by obtaining exclusive rights to a new branded promotion, LuxeYard, exclusive rights to any other new branded promotion in the future and royalties on future sales by Pier2 to customers stolen from Windy City by replacing the 2013 Agreement with a new Exclusive Distribution Agreement, dated July 31, 2014 (the "2014 Agreement") and an Exclusive Royalty Agreement dated February 4, 2015 (the "2015 Agreement").

22. The *Windy City* Action alleges that, since entering into the 2014 Agreement and 2015 Agreement, the defendants have plotted and conspired to employ a deliberate, systematic and fraudulent campaign designed to destroy Windy City as a going concern in the State of Illinois and destroy Windy City's customer relationships by, among other things, threatening to launch competing kiosk software brands, hiding royalties owed to Windy City and interfering with Windy City's relationships with its customers.

23. The *Windy City* Action asserts causes of action against all defendants for injunction (Count I), fraud (Count III), intentional interference with contract (Count IV), intentional interference with prospective economic advantage (Count V), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IX), violations of the Uniform Deceptive Trade Practices Act (Count X), and declaratory judgment (Count XIV).

24. The *Windy City* Action asserts causes of action against Pier2 and Pace-O-Matic for

equitable accounting (Count II) and breach of the 2013 Agreement (Count VIII).

25. The *Windy City* Action asserts causes of action against Pace-O-Matic for breach of the 2014 Agreement (Count VI) and breach of the 2015 Agreement (Count VII).

26. Count XI asserts a cause of action against Casino Law Group and Aronovitz for breach of fiduciary duty because Aronovitz failed to disclose multiple conflicts of interest, including that he acted in his own self-interest by steering Windy City into a business deal that would benefit his controlled entity, Pier 2, and failing to disclose Aronovitz's ownership interests in Pier 2 and Pace-O-Matic and his personal participation in the 2013 Agreement and Windy City as a member. Count XI also alleges breach of fiduciary duty because Aronovitz falsely denied that a conflict of interest existed, engaged in the practice of law between October 16, 2013 and January 16, 2014 when his license was suspended, and failed to disclose known breaches of the 2013 Agreement by Pier2 and Pace-O-Matic.

27. Count XII seeks a declaration that Aronovitz is no longer a member of Windy City and Count XIII asserts, in the alternative, a cause of action for expulsion of Aronovitz as a member of Windy City based on alleged breaches of fiduciary duty.

## THE POLICY

28. StarStone issued a Lawyers Professional Liability Insurance Policy, number Z82390170APL, to Casino Law Group for the period of August 17, 2017 to August 17, 2018. (A true and correct copy of the Policy is attached hereto as **Exhibit B**).

29. The Policy provides coverage subject to a $500,000 limit of insurance per **Claim** and $1 million in the aggregate subject to a $10,000 per **Claim** retention.

30. The Policy contains the following applicable Insuring Agreement:

    A.    COVERAGE - PROFESSIONAL LIABILITY

        The **Insurer** shall pay on behalf of the **Insured** those sums in excess of the

6

        Retention which the **Insured** becomes legally obligated to pay as **Damages** as a result of any **Claim** which is first made against the **Insured** during the **Policy Period**, and reported to the **Insurer** in writing during the **Policy Period** or within 60 days thereafter.

31.     The Policy contains the following relevant definitions:

    C.     **Claim** means:

    1. a written demand for monetary damages, including the service of suit or institution of arbitration proceedings, by reason of a **Wrongful Act**; or

    2. a written request that an **Insured** sign an agreement to toll the statute of limitations, by reason of a **Wrongful Act**.

    A **Claim** shall be deemed to have been first made at the time written notice of the **Claim** is first received by any **Insured**.

    E.     **Damages** means the monetary portion of any judgment, award or settlement, provided always that **Damages** shall not include:

    1. taxes, civil fines, criminal fines, sanctions, fees, restitution or penalties imposed by law, statute, regulation or court rule, or any amount awarded in a **Disciplinary Proceeding**;

    2. punitive or exemplary damages, or the multiplied portion of multiplied damages;

    3. any amounts deemed uninsurable under the law pursuant to which this Policy may be construed;

    4. the cost to comply with any form of injunctive or other non-monetary or declaratory relief; or

    5. any amounts payable by any **Insured** for, or for the return of, fees, commissions, profits or charges for services or consideration.

    G.     **Insured** means:

    1. the **Named Insured** and any **Predecessor Firm**;

    2. any individual or professional corporation who is or becomes a partner, principal, officer, director, stockholder, or employee of the **Named Insured**, but solely with respect to **Professional Services** performed on behalf of the **Named Insured** or **Predecessor Firm** . . .

    I.     **Named Insured** means the person or entity shown in Item 1. of the Declarations.

    M.     **Professional Services** means services arising out of the conduct of the **Insured's** profession as a lawyer or as a lawyer acting in the capacity of an arbitrator,

7

mediator, title insurance agent, notary public, or as a member, director, or officer of any Bar Association, its governing board or any of its committees. **Professional Services** shall include services as an administrator, conservator, executor, guardian, or in a similar fiduciary capacity, or trustee, if such services are usual and customary to the practice of law and are in the rendering of professional legal services to others in an attorney/client relationship.

P. **Wrongful Act** means any actual or alleged act, error, omission, or **Personal Injury** arising out of **Professional Services** rendered by an **Insured** for others.

32. The Policy contains the following relevant exclusions:

This Policy does not apply to any **Claim** made against the **Insured**:

B. based upon, arising out of, directly or indirectly resulting from, or in any way involving any **Wrongful Act** occurring prior to the **Policy Period** if any **Insured**, on or before the effective date of the first Lawyers Professional Liability Policy issued by the **Insurer** to the **Named Insured** which has been continuously renewed and maintained in effect to the effective date of this **Policy Period**, knew or could have reasonably foreseen that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**;

D. based upon, arising out of, directly or indirectly resulting from, or in any way involving any dishonest, fraudulent, or malicious act, error, omission or offense committed by or ratified by any **Insured**; provided, however, the **Insurer** will provide a defense for such **Claim**, unless or until the dishonest, fraudulent, or malicious act, error, or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether or not appealed;

Provided however if coverage under this Policy would be excluded because of exclusion D above, the coverage otherwise afforded by this Policy shall continue to apply to any **Insured** who neither committed, personally acquiesced in, or remained passive after knowledge of such dishonest, fraudulent, or malicious act, error, or omission.

E. based upon, arising out of, directly or indirectly resulting from, or in any way involving any actual or alleged conversion, misappropriation, improper commingling of funds, or the return, restitution, or disgorgement of fees, costs or expenses;

K. based upon, arising out of, directly or indirectly resulting from, or in any way involving any pre or post formation business enterprise other than the **Named Insured** which is, was, or will be more than 5% owned by any **Insured** or in which any **Insured** is or was an officer, director, partner, manager, or employee, or which is or was directly or indirectly controlled, operated or managed by any **Insured**, either individually or in a fiduciary capacity;

This exclusion K. applies whether or not the **Insured's** activities also constitute or involve **Professional Services**.

V. based upon, arising out of, directly or indirectly resulting from, or in any way

involving any liability assumed by any **Insured** under any contract or agreement unless such liability would have attached to the **Insured** in the absence of such contract or agreement.

## COUNT I

### STARSTONE HAS NO DUTY TO DEFEND OR INDEMNIFY CASINO LAW GROUP OR ARONOVITZ WITH RESPECT TO THE *WINDY CITY* ACTION UNDER THE POLICY (EXCLUSION K.)

33. StarStone repeats and realleges paragraphs 1 through 32 above as and for paragraph 33 of this Complaint for Declaratory Judgment.

34. The Policy provides coverage for sums in excess of the Retention which the **Insured** becomes legally obligated to pay as **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period**, and reported to the **Insurer** in writing during the **Policy Period** or within 60 days thereafter.

35. Casino Law Group is the **Named Insured**.

36. Aronovitz is a partner, principal, officer, director, stockholder or employee of Casino Law Group and, therefore, is an **Insured** with respect to **Professional Services** performed on behalf of Casino Law Group.

37. Pursuant to exclusion K., the Policy does not apply to any **Claim** made against the **Insured** based upon, arising out of, directly or indirectly resulting from, or in any way involving any pre or post formation business enterprise other than the **Named Insured** which is, was, or will be more than 5% owned by any **Insured** or in which any **Insured** is or was an officer, director, partner, manager, or employee, or which is or was directly or indirectly controlled, operated or managed by any **Insured**, either individually or in a fiduciary capacity.

38. Exclusion K. applies whether or not the **Insured's** activities also constitute or involve **Professional Services**.

39. The *Windy City* action is based upon, arises out of, directly or indirectly results from and involves Pier2, a pre or post formation business enterprise other than Casino Law Group which is or was more than 5% owned by Aronovitz, which Aronovitz is or was a manager, and/or which is or was directly or indirectly controlled, operated or managed by Aronovitz.

40. The *Windy City* action is based upon, arises out of, directly or indirectly results from and involves Pace-O-Matic, a pre or post formation business enterprise other than Casino Law Group which is or was more than 5% owned by Aronovitz, in which Aronovitz is or was a manager, and/or which is or was directly or indirectly controlled, operated or managed by Aronovitz.

41. The *Windy City* action is based upon, arises out of, directly or indirectly results from and involves Windy City, a pre or post formation business enterprise other than Casino Law Group which is or was more than 5% owned by Aronovitz, in which Aronovitz is or was a manager, and/or which is or was directly or indirectly controlled, operated or managed by Aronovitz.

42. Accordingly, exclusion K., precludes coverage for the *Windy City* Action.

43. Therefore, StarStone does not owe a duty to defend or obligation to indemnify Casino Law Group or Aronovitz with respect to the *Windy City* Action under the Policy.

## COUNT II

### STARSTONE HAS NO DUTY TO INDEMNIFY CASINO LAW GROUP OR ARONOVITZ WITH RESPECT TO THE *WINDY CITY* ACTION UNDER THE POLICY (OTHER POLICY TERMS, CONDITIONS AND EXCLUSIONS)

44. StarStone repeats and realleges paragraphs 1 through 43 above as and for paragraph 44 of this Complaint for Declaratory Judgment.

*Professional Services*

45. The Policy provides coverage for sums in excess of the Retention which the **Insured** becomes legally obligated to pay as **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period**, and reported to the **Insurer** in writing during the **Policy Period** or within 60 days thereafter.

46. A **Claim** includes a written demand for monetary damages, including the service of suit or institution of arbitration proceedings, by reason of a **Wrongful Act**.

47. **Wrongful Act** means any actual or alleged act, error, omission, or **Personal Injury** arising out of **Professional Services** rendered by an **Insured** for others.

48. **Professional Services** means services arising out of the conduct of the **Insured's** profession as a lawyer or as a lawyer acting in the capacity of an arbitrator, mediator, title insurance agent, notary public, or as a member, director, or officer of any Bar Association, its governing board or any of its committees.

49. To the extent the *Windy City* Action does not involve any actual or alleged act, error, omission or **Personal Injury** arising out of **Professional Services** rendered by Casino Law Group or Aronovitz, the Policy does not provide coverage.

*Damages as Defined by the Policy*

50. To the extent the *Windy City* Action does not seek **Damages** as defined by the Policy, the Policy does not provide coverage.

*Prior Knowledge Exclusion – Exclusion B.*

51. Pursuant to exclusion B., the Policy does not apply to any **Claim** made against the **Insured** based upon, arising out of, directly or indirectly resulting from, or in any way involving any **Wrongful Act** occurring prior to the **Policy Period** if any **Insured**, on or before the effective

11

date of the first Lawyers Professional Liability Policy issued by the **Insurer** to the **Named Insured** which has been continuously renewed and maintained in effect to the effective date of this **Policy Period**, knew or could have reasonably foreseen that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

52. The effective date of the first policy issued to Casino Law Group by StarStone is August 17, 2017.

53. No coverage is provided to the extent that Casino Law Group or Aronovitz on or before August 17, 2017 would reasonably foresee that the **Wrongful Acts** alleged in the *Windy City* Action might reasonably be expected to be the basis of a **Claim**.

*Fraud Exclusion – Exclusion D.*

54. Pursuant to exclusion D., the Fraud exclusion, the Policy does not apply to any **Claim** made against the **Insured** based upon, arising out of, directly or indirectly resulting from, or in any way involving any dishonest, fraudulent, or malicious act, error, omission or offense committed by or ratified by any **Insured**. However, the **Insurer** will provide a defense for such **Claim**, unless or until the dishonest, fraudulent, or malicious act, error, or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether or not appealed.

55. Accordingly, to the extent a trial verdict, court ruling, regulatory ruling or legal admission determines that Casino Law Group or Aronovitz committed or ratified a dishonest, fraudulent or malicious act, error, omission or offense, the Policy does not provide coverage.

*Illegal Profit Exclusion – Exclusion E.*

56. Pursuant to exclusion E., the Illegal Profit exclusion, the Policy does not apply to any **Claim** made against the **Insured** based upon, arising out of, directly or indirectly resulting

from, or in any way involving any actual or alleged conversion, misappropriation, improper commingling of funds, or the return, restitution, or disgorgement of fees, costs or expenses.

57. Accordingly, to the extent the *Windy City* Action is based upon, arises out of, directly or indirectly results from or in any way involves actual or alleged conversion, misappropriation, improper commingling of funds or the return, restitution or disgorgement of fees, costs or expenses, the Policy does not provide coverage.

*Contract Exclusion – Exclusion V.*

58. Pursuant to exclusion V., the Contract exclusion, the Policy does not apply to any **Claim** made against the **Insured** based upon, arising out of, directly or indirectly resulting from, or in any way involving any liability assumed by any **Insured** under any contract or agreement unless such liability would have attached to the **Insured** in the absence of such contract or agreement.

59. To the extent the *Windy City* Action is based upon, arises out of, directly or indirectly results from or in any way involves liability assumed by Casino Law Group or Aronovitz under a contract or agreement, the Policy does not provide coverage.

*Conclusion*

60. Therefore, pursuant to the Policy terms and provisions set forth above, StarStone does not have an obligation to indemnify Casino Law Group or Aronovitz with respect to the *Windy City* Action.

**WHEREFORE**, StarStone Specialty Insurance Company respectfully requests that this Court enter judgment in its favor and against the defendant:

    A.     Declaring that StarStone Specialty Insurance Company has no duty to defend Casino Law Group or Cory Aronovitz in connection with the lawsuit captioned *Windy City Promotions, LLC v. Pace-O-Matic, Inc., Pier2 Holdings, LLC, Cory*

      *Aronovitz, Casino Law Group, Dwayne Waxer and Daniel Warren*, Case No. 2018 CH 04716, pending in the Circuit Court of Cook County, Illinois;

B. Declaring that StarStone Specialty Insurance Company has no duty to indemnify Casino Law Group or Cory Aronovitz in connection with the lawsuit captioned *Windy City Promotions, LLC v. Pace-O-Matic, Inc., Pier2 Holdings, LLC, Cory Aronovitz, Casino Law Group, Dwayne Waxer and Daniel Warren*, Case No. 2018 CH 04716, pending in the Circuit Court of Cook County, Illinois;

C. Awarding such other and further relief as the Court finds just and proper.

Dated: May 29, 2018.    Respectfully submitted,

            **STARSTONE SPECIALTY INSURANCE COMPANY**,

           By: */s Gary L. Gassman*
              One of its Attorneys

Gary L. Gassman (#6217204)
Jonathan R. Walton (#6310428)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: 312-474-7900
Fax: 312-474-7898
ggassman@cozen.com
jwalton@cozen.com